UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEVIN M. MCCANN, M.D.,

     Plaintiff,

     v.

UNUM PROVIDENT, et al.,

     Defendants.

CIVIL ACTION NO. 11-3241 (MLC)

**MEMORANDUM OPINION**

**COOPER, District Judge**

## I.  INTRODUCTION

The plaintiff, Kevin M. McCann, M.D., brings this action against, among others, the defendant Provident Life and Accident Insurance Company, sued here as "Unum Provident" ("Provident"). (See generally dkt. entry no. 1, Compl., Count I.)  McCann alleges that he purchased a supplemental long-term disability ("LTD") insurance policy ("the Policy") from Provident in 1991.  He also alleges that Provident, in 2008, determined that he was "totally disabled" under the terms of the Policy and eligible for monthly benefit payments, and began issuing such payments.  (See id. at ¶¶ 22, 31.)  But McCann also alleges that Provident thereafter improperly determined that he was no longer totally disabled, and terminated his benefit payments.  (See id. at ¶¶ 34-35, 37.)  He thus raises a breach of contract claim against Provident, seeking payment for his allegedly past-due benefits and reinstatement of monthly benefit payments.  (See id. at ¶ 49.)

Provident now moves for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Local Civil Rule ("Local Rule") 56.1(a), seeking a declaration that Count I of the Complaint is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). (See dkt. entry no. 32, Provident Mot.)  Provident argues in support of the Provident Motion that: (1) the Policy is part of the Residents' Supplemental Disability Insurance Plan ("RSDP"); (2) the RSDP is an employee welfare benefit plan; and (3) Count I of the Complaint is governed by ERISA.  (See dkt. entry no. 32-4, Provident Br. at 6-24.)

McCann opposes the Provident Motion, and cross-moves for summary judgment, seeking a declaration that ERISA is inapplicable. (See generally dkt. entry no. 36, McCann Opp'n Br; dkt. entry no. 33, McCann Cross Mot.)  He argues that the Policy is not part of the RSDP and is not separately an employee welfare benefit plan. (See McCann Opp'n Br. at 8-15; dkt. entry no. 33-1, McCann Br. at 8-13.)  He alternatively argues that the ERISA Safe Harbor Provision promulgated by the United States Department of Labor, 29 C.F.R. § 2510.3-1(j), removes the Policy -- and thus removes Count I of the Complaint -- from the sphere of ERISA's coverage.  (See McCann Opp'n Br. at 15-17; McCann Br. at 14-18.)

The Court has considered all of the arguments raised by Provident and McCann, both in their respective papers and at oral

argument.  (See dkt. entry no. 51, Minute Entry for 12-14-12 Oral
Arg.)  The Court now concludes, for the reasons set forth below,
that Count I of the Complaint is governed by ERISA.

## II.  STANDARD OF REVIEW

The Court will grant a motion for summary judgment only if the
movant demonstrates both that: (1) no genuine disputes of material
fact exist; and (2) the movant is entitled to judgment as a matter
of law.  See Fed.R.Civ.P. 56(a); Koenig v. Automatic Data
Processing, 156 Fed.Appx. 461, 466 (3d Cir. 2005).

The movant carries the initial burden of demonstrating an
absence of genuinely disputed material facts.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 330 (1986).  Material facts are those that
"could affect the outcome" of the proceeding, and "a dispute about
a material fact is 'genuine' if the evidence is sufficient to
permit a reasonable jury to return a verdict for the non-moving
party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)
(citation omitted).  The Court, when determining whether the movant
has carried this burden, must view the evidence in the light most
favorable to the non-movant and draw all reasonable inferences in
the non-movant's favor.  Scott v. Harris, 550 U.S. 372, 380 (2007);
Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

If the movant demonstrates an absence of genuinely disputed
material facts, then the burden shifts to the non-movant to

demonstrate the existence of at least one genuine issue for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Williams v. Bor. of W. Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (citation omitted). The non-movant cannot, when demonstrating the existence of issues for trial, rest upon argument; the non-movant must show that such issues exist by referring to the record.  See Fed.R.Civ.P. 56(c)(1); Matsushita Elec. Indus. Co., 475 U.S. at 586.

If the non-movant fails to demonstrate that at least one genuine issue exists for trial, then the Court must determine whether the movant is entitled to judgment as a matter of law.  A movant is entitled to judgment as a matter of law if, at trial, no reasonable jury could find for the non-moving party.  See Celotex Corp., 477 U.S. at 325; In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Chaplin v. NationsCredit Corp., 307 F.3d 368, 372 (5th Cir. 2002) ("To obtain summary judgment, 'if the movant bears the burden of proof on an issue . . . because . . . he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the . . . defense to warrant judgment in his favor.'").

It appears that Provident bears the burden of proving that the Policy is part of an ERISA-governed employer welfare benefit plan, subject to ERISA governance.  See Joy Global, Inc. v. Wis. Dep't of Workforce Dev. (In re Joy Global, Inc.), 346 B.R. 659, 667-68 (D. Del. 2006); see also Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 n.4 (9th Cir. 1988).  McCann, by contrast, bears the burden of proving that the Safe Harbor Provision removes the Policy from the sphere of ERISA's coverage.  See Pfeil v. State St. Bank & Trust Co., 671 F.3d 585, 598-99 (6th Cir.), cert. denied, 133 S.Ct. 758 (2012); Morris v. Paul Revere Ins. Grp., 986 F.Supp. 872, 878-89 (D.N.J. 1997).

### III. LOCAL RULE 56.1(a)

Local Rule 56.1(a), a companion to Rule 56, (1) requires parties to present argument by reference to the materials in the record, and (2) where a non-movant fails to present an argument by reference to the record, allows the Court to deem the movant's factual assertions undisputed.  See Fed.R.Civ.P. 56(c), (e)(2); Carita v. Mon Cheri Bridals, LLC, No. 10-2517, 2012 WL 3638697, at *1-2 (D.N.J. Aug. 22, 2012).  In pertinent part, Local Rule 56.1(a) provides that:

> On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue . . . . The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's

statement, <u>indicating agreement or disagreement and, if
not agreed, stating each material fact in dispute and
citing to the affidavits and other documents submitted
in connection with the motion</u>; any material fact not
disputed shall be deemed undisputed for purposes of the
summary judgment motion.

L.Civ.R. 56.1(a) (emphasis added).

A movant's statement of facts and a non-movant's related
response serve a vital purpose, in that they assist the Court in
identifying whether material facts are truly in dispute.  <u>See</u> <u>Am.
Plaza, LLC v. Marbo Cross Shop, LLC</u>, No. 08-5963, 2010 WL 455349,
at *2 (D.N.J. Feb. 3, 2010).  Local Rule 56.1(a) thus puts the onus
on the parties, rather than the Court, to find evidence of record
supporting their respective arguments.  <u>See</u> <u>Baker v. Hartford Life
Ins. Co.</u>, No. 08-6382, 2010 WL 2179150, at *2 n.1 (D.N.J. May 28,
2010) ("It is not the Court's responsibility to comb the record on
behalf of Plaintiff's counsel."), <u>aff'd</u>, 440 Fed.Appx. 66 (3d Cir.
2011); <u>N.J. Auto. Ins. Plan v. Sciarra</u>, 103 F.Supp.2d 388, 408
(D.N.J. 1998) ("[I]t is the responsibility of each party to support
its own contentions with a proper basis in the record of the
case.").  "Given the vital purpose that such rules serve, litigants
ignore them at their peril."  <u>Cabán Hernández v. Philip Morris USA,
Inc.</u>, 486 F.3d 1, 7 (1st Cir. 2007).

Provident, pursuant to Local Rule 56.1(a), has filed a
statement of facts in support of its motion.  (<u>See generally</u> dkt.

entry no. 32-5, Provident SOF.)  McCann has filed a response, indicating disagreement with the statements in paragraphs 2-4, 11, 13, 18, 24, 29, 34, 36, 40-42, 55-56, 58-59, and 68-69 ("Paragraphs at Issue") of the Provident SOF.  (See dkt. entry no. 36-1, McCann Response to Provident SOF).  Provident now argues that the Response to the Provident SOF is insufficient, insofar as McCann fails to cite affidavits or other documents of record to support it.  (See dkt. entry no. 38, Provident Reply Br. at 1-3, 9.)  Provident thus urges the Court to deem the facts recited in the Paragraphs at Issue to be undisputed.  (See id.)

The Court has carefully examined both the Provident SOF and McCann's Response to the Provident SOF, and now concludes that the facts recited in the Paragraphs at Issue are deemed admitted. McCann has not demonstrated the existence of genuine issues of material fact by reference to evidence of record.  Instead, he argues that the Court should not accept Provident's recitations of fact based on the credibility of the underlying evidence.

Such arguments are unavailing.  McCann's failure to reference evidence of record demonstrates that there is no reason to disbelieve the statements of fact contained in the Paragraphs at Issue.  See Healy v. N.Y. Life Ins. Co., 860 F.2d 1209, 1215-16 (3d

Cir. 1988); <u>Sciarra</u>, 103 F.Supp.2d at 408.[1]  The Court will thus

deem the facts recited in the Paragraphs at Issue to be undisputed,

and incorporate them into the following findings of fact.

## IV.  FINDINGS OF FACT

**A.  McCann's Relationship to Henry Ford Hospital**

McCann was hired by Henry Ford Hospital ("the Hospital") to

serve in a two-year fellowship program, the Hospital's Graduate

Trainee Physician Program ("the Program").  He worked in the

Hospital's neuro-radiology department from July 1, 1989 until his

fellowship concluded on June 30, 1991.  (<u>See</u> Provident SOF at ¶ 5;

---

[1] McCann argues that the Court should nonetheless disregard
certain facts recited in the Paragraphs at Issue: (1) because he
cannot remember a certain conversation; (2) because Provident
relied on affidavits, rather than other forms of documentary
evidence; and (3) based on his assertion that certain affiants lack
knowledge of the materials in their affidavits, in violation of
Local Rule 7.2(a).  (<u>See</u> McCann Response to Provident SOF at
Paragraphs at Issue.)  Each argument lacks merit.  First, McCann's
inability to recall certain conversations does not create a dispute
as to material facts.  Second, Provident properly relied on sworn
affidavits when crafting the Provident SOF.  <u>See</u> Fed.R.Civ.P.
56(c); L.Civ.R. 56.1(a).  Third, and in stark contrast to McCann's
assertions, it appears that each affiant claimed personal knowledge
of the matters discussed in his affidavit.  (<u>See, e.g.</u>, dkt. entry
no. 32-3, Plourde Aff. at ¶ 2.)
   The Court is mindful that McCann both responded to the
Provident SOF and filed a separate and distinct SOF in support of
the Cross Motion.  McCann could have disputed the Provident SOF,
and demonstrated the existence of disputed material facts, in
either document.  <u>See</u> <u>G.S. v. Cranbury Twp. Bd. of Educ.</u>, 450
Fed.Appx. 197, 203 n.4 (3d Cir. 2011).  But it appears that McCann
did not refute the facts recited in the Paragraphs at Issue in
either document.  (<u>Compare</u> Provident SOF at Paragraphs at Issue,
<u>with</u> McCann Response to Provident SOF at Paragraphs at Issue, <u>and</u>
dkt. entry no. 33-2, McCann SOF.)

McCann Response to Provident SOF at ¶ 5; McCann SOF at ¶ 2; dkt. entry no. 35-1, Provident Response to McCann SOF at ¶ 2.)

**B.    The Employment Benefits Offered by the Hospital**

The Hospital agreed to provide McCann a package of employment benefits that included "medical, dental, optical, disability, life insurance, and other benefits in accordance with the [Program] benefit package". (See Provident SOF at ¶¶ 7-9; McCann Response to Provident SOF at ¶¶ 7-9; dkt. entry no. 32-3, Del Mauro Cert., Ex. I, McCann Response to Interrogatories at ¶ 3; Del Mauro Cert., Ex. J, First Program Agreement; Del Mauro Cert., Ex. J, Third Program Agreement.)  McCann acknowledges that the Hospital provided some of those benefits, but denies that the Hospital offered or otherwise informed him of the opportunity to purchase disability insurance. (See McCann Response to Provident SOF at ¶¶ 8-9, 48.)

It is, however, undisputed that the Hospital provided all eligible employees with an opportunity to secure a "Base Plan" of non-contributory LTD benefits. (See Provident SOF at ¶¶ 10-11, 21; McCann Response to Provident SOF at ¶¶ 10-11.)[2]  It is also undisputed that the Hospital determined which employees were eligible for coverage under the Base Plan and set the maximum

---

[2] McCann disputes that he received LTD benefits under the Base Plan. (See McCann Response to Provident SOF at ¶¶ 10-11.)  It is, however, sufficient to note that he became eligible for benefits under the Base Plan on or about January 1, 1990. (See Plourde Aff. at ¶¶ 6-7.)

monthly benefit available thereunder.  (See Provident SOF at ¶¶ 24, 29.)  The Base Plan, between 1972 and 1998, was underwritten by Provident's predecessor, Unum Life Insurance Company of America ("Unum").  (See Provident SOF at ¶¶ 14, 16, 19, 24-25.)[3]

The Hospital also provided the opportunity to purchase supplemental LTD insurance to certain employees.  Staff doctors, for example, could purchase supplemental LTD insurance from Provident under the Staff Doctors' Supplemental Disability Insurance Plan ("SSDP").  (See Provident SOF at ¶¶ 31-32, 35-36; McCann Response to Provident SOF at ¶¶ 31-32; Plourde Aff., Ex. 4, SSDP.)  Provident assigned SSDP polices to a common risk group, and staff doctors participating in the SSDP accepted billing on their respective policies.  (See Provident SOF at ¶¶ 33-34; McCann Response to Provident SOF at ¶¶ 33-34.)  It is undisputed that the Hospital determined which employees could participate in the SSDP.  (See Provident SOF at ¶ 34.)

The Hospital provided a similar opportunity to residents participating in the Program ("Residents").  Residents could purchase supplemental LTD insurance from Provident under the RSDP,

---

[3] Unum and Provident merged in 1999.  See Harding v. Provident Life & Acc. Ins. Co., 809 F.Supp.2d 403, 406 n.2 (W.D. Pa. 2011); Simon v. UnumProvident Corp., No. 99-6638, 2002 WL 1060832, at *1 (E.D. Pa. May 23, 2002).  It appears that the entity sued here as "Unum Provident" and referred to in this Memorandum Opinion as "Provident" thereafter underwrote the Base Plan.  (See Provident SOF at ¶ 23.)

which was exclusively available to Residents.  (See Plourde Aff. at
¶ 12.)  The RSDP was funded through the purchase of individual
policies of LTD insurance by Residents, who were eligible to
participate by virtue of their employment by the Hospital.  (See
dkt. entry no. 32-1, Chavez Aff. at ¶ 5.)  Provident assigned RSDP
polices to a common risk group, Risk Group No. 62252, and Residents
participating in the RSDP accepted billing on their respective
policies.  (See Provident SOF at ¶¶ 33-34; McCann Response to
Provident SOF at ¶¶ 33-34; Plourde Aff. at ¶¶ 12-14.)  Seven
Residents purchased RSDP policies while McCann was employed at the
Hospital, and twenty-five Residents participated in the RSDP
between March 1, 1991 and October 1, 1993.  (See Provident SOF at
¶ 40.)

     Residents who purchased policies under the RSDP enjoyed
premium discounts by virtue of their association with both the RSDP
and the Hospital.  (See Plourde Aff. at ¶ 14; Chavez Aff. at ¶ 5
("The discount would not have been available to the participants
but for their employment by and with [the Hospital]."）.)  All RSDP
policy holders received a "Risk Discount", i.e., a fifteen percent
premium discount based solely on their employment by the Hospital.
(See dkt. entry no. 38-1, Supp. Plourde Aff. at ¶ 8; see also dkt.
entry no. 33-4, Attwood Cert., Ex. C, Provident's Answers to
Interrogatories at ¶¶ 2-3.)  RSDP policyholders also enjoyed

11

further discounts, such as those offered based on a policyholder's chosen method of payment.  (See Supp. Plourde Aff. at ¶ 8; see also Del Mauro Cert., Ex. K, 5-9-91 Letter from Lucasse, Ellis, Inc. to McCann at 1.)

**C.  McCann's Interactions with Lucasse, Ellis, Inc.**

It is undisputed that insurance brokerage firm Lucasse, Ellis, Inc. ("LEI") was the Hospital's broker of record for policies issued under the Base Plan, SSDP, and RSDP.  (See Provident SOF at ¶ 58; see also Plourde Aff. at ¶ 19.)  LEI sent McCann materials relating to the RSDP in 1991, before the end of his employment by the Hospital.  (See McCann SOF at ¶¶ 5-6; Provident Response to McCann SOF at ¶¶ 5-6.)  Those materials directly, repeatedly, and unequivocally refer to the RSDP.  The words "Residents' Supplemental Disability Insurance Plan" appear at the top of the first page, on the first line, centered on the page.  (Del Mauro Cert., Ex. H, LEI Marketing Materials at 1.)  Further, the LEI Marketing Materials provide that:

> The Provident Life and Accident Insurance Company is the industry's leader in individual disability coverage for physicians.  They were chosen by the Henry Ford Medical Group to provide supplemental disability insurance to Ford Physicians, and will underwrite the Resident[s'] Plan.

(Id.)  LEI, on the last page of the LEI Marketing Materials, invites questions regarding comparisons of the benefits available under the RSDP with benefits offered by competitors.  (Id. at 3.)

It is undisputed that McCann thereafter spoke with LEI brokerage agent David Manes, and disclosed to Manes that he earlier had purchased an individual LTD policy ("the Northwestern Policy"). (<u>See</u> McCann SOF at ¶¶ 6, 32-33.)  It is also undisputed that McCann expressed to Manes that he was interested in obtaining a new individual LTD policy to replace the Northwestern Policy.  (<u>See</u> <u>id.</u> at ¶ 33 (citing McCann Cert. at ¶ 4).)

Manes thereafter wrote to McCann, noting allegedly significant differences between the Northwestern Policy and the policy offered by LEI and Provident, <u>i.e.</u>, the Policy.  (<u>See</u> McCann Cert., Ex. D, Handwritten Letter at Page No. P 000000091 ("Handwritten Letter").) The Handwritten Letter states that "[i]n every case . . . [the Northwestern Policy] is providing a lesser benefit" than that provided by the Policy.  (<u>Id.</u>)

**D.    The Policy**

McCann applied to Provident for insurance coverage on May 8, 1991, while still employed by the Hospital.  (<u>See</u> Plourde Aff., Ex. 5, Application; Provident SOF at ¶ 48; McCann Response to Provident SOF at ¶ 48.)  The Application is a generic form application for disability insurance; it does not refer to any specific plan or employer.  (<u>See</u> Application.)  As completed and, by signature, verified by McCann, the Application identifies McCann's "employer"

as "Henry Ford Hospital", his "occupation" as "M.D.", and his "exact duties" as "fellow in neuro radiology". (Id. at 1.)

McCann elected, through a checkbox on the Application, to pay the Policy premiums in annual (rather than semi-annual, quarterly, or monthly) installments. (See id. at 2.) Manes wrote to McCann on May 9, 1991, and confirmed that "the annual premium [was] discounted by 23%, while all other modes [would] receive a 19% discount." (5-9-91 Letter from LEI to McCann at 1.)

It is undisputed that Provident accepted the Application, added McCann to the Risk Group No. 62252, and issued the Policy to McCann. (See Provident SOF at ¶ 55.)[4] The Policy took effect on July 1, 1991, one day after McCann left the Hospital's employ, and provided for a monthly benefit based on his post-fellowship income. (See Plourde Aff., Ex. 5, Policy; McCann SOF at ¶ 20; Provident Response to McCann SOF at ¶ 20.) McCann asserts that he set both the effective date and monthly benefit amount based on Manes's recommendations. (See McCann SOF at ¶ 21; McCann Cert. at ¶ 7.)

---

[4] McCann, by way of response to the Provident SOF, states "that the policy was [not] added to an existing risk group or related to the 'Residents' Supplemental' plan 'pursuant to Dr. McCann's application.'" (Response to Provident SOF at ¶ 55.) But he fails to support this contention by reference to evidence of record. The Court, for the reasons detailed in Section III of this Memorandum Opinion, accepts as undisputed that Provident treated the Policy as issued under the RSDP and added McCann to Risk Group No. 62252. (See Provident SOF at ¶ 55.) See Healy, 860 F.2d at 1215-16 (no genuine issue of material fact arises if the non-movant fails to introduce counter-affidavits or other evidence to support his position).

The Policy does not refer to the RSDP or the Hospital, nor does it refer to Risk Group No. 62252 or group discounts. (See generally Policy.)  But McCann acknowledged in a 1992 interview with Provident that he selected the Policy based on a "group discount". (Plourde Aff., Ex. 6, Personal History Interview at 4; Provident SOF at ¶ 59.)  The record demonstrates that McCann received a fifteen percent discount based on his association with Risk Group No. 62252, and additional discounts based on other facts, e.g., his election to pay his premiums in annual installments. (See Supp. Plourde Aff. at ¶¶ 6, 8-9; see also 5-9-91 Letter from LEI to McCann at 1.)

**E.   McCann's Claim Under the Policy, and Provident's Subsequent Award and Termination of Benefits**

McCann sent Provident a notice of claim for benefit payments in 2007. (See Provident SOF at ¶ 64; McCann Response to Provident SOF at ¶ 64.)  Provident, after determining that McCann was "totally disabled" and eligible for benefits under the Policy, began issuing benefit payments on or about April 1, 2007. (See Provident SOF at ¶ 65; McCann Response to Provident SOF at ¶ 65.) But Provident terminated McCann's benefit payments in 2009 after determining that "the medical documentation did not support a continuation of disability, and he was released to return to work full time by his treating cardiothoracic surgeon". (Chavez Aff. at ¶ 9.)

McCann sent Provident a written appeal, disputing its determination that he was not disabled and seeking reinstatement of his benefit payments. (See Provident SOF at ¶ 70; McCann Response to Provident SOF at ¶ 70.)  Provident considered the written appeal, but upheld its determination in a letter dated September 20, 2010. (See Provident SOF at ¶ 72; McCann Response to Provident SOF at ¶ 72; Chavez Aff., Ex. F, Final Determination Letter.)  In the Final Determination Letter, Provident notified McCann of his right to file a civil suit pursuant to § 502(a) of ERISA, 29 U.S.C. § 1132(a). (See Final Determination Letter; see also Chavez Aff. at ¶ 14.)

This action followed. (See generally Compl.)  Insofar as the action concerns Provident, McCann alleges that Provident breached a contract -- i.e., the Policy -- by determining that he was not disabled and terminating his benefit payments. (See id. at ¶¶ 44-49.)  He seeks, inter alia, payment of his allegedly past-due benefits and reinstatement of benefit payments. (See id.)[5]

---

[5] McCann also seeks an award of his reasonable attorney's fees "[p]ursuant to 29 U.S.C. § 1132(g)" -- i.e., an award of reasonable attorney's fees under ERISA. (Compl. at ¶ 50.)  The Court notes that McCann paradoxically seeks fee-shifting relief under ERISA while steadfastly arguing against its application to this dispute.

## V.   ANALYSIS

The Court is tasked with determining whether Count I of the Complaint is governed by ERISA.  Provident argues that the Policy was issued pursuant to the RSDP, that the RSDP is an employee welfare benefit plan (as that term is defined by ERISA), and that Count I of the Complaint is thus governed by ERISA.  (See Provident Br. at 6-21; Provident Reply Br. at 4-15.)  McCann contends that the Policy was not obtained under the RSDP and otherwise bears no relation to the RSDP, as he was not employed by the Hospital when the Policy took effect.  (See McCann Opp'n Br. at 8-11.)[6]  He also appears to argue that the Policy, as distinguished from the RSDP, is not an employee welfare benefit plan.  (See id. at 8-11, 12-15.)  He fails, however, to directly address Provident's argument that the RSDP is an employee welfare benefit plan.  (See generally id.; McCann Br.)

McCann alternatively argues that the Safe Harbor Provision removes the Policy from the sphere of ERISA's coverage.  (See McCann Opp'n Br. at 15-17; McCann Br. at 14-18.)  Provident disagrees, and contends, inter alia, that the Safe Harbor Provision is inapplicable here because: (1) RSDP policyholders enjoyed a

---

[6] McCann also argues that the Policy (1) is not a continuation of coverage provided during his employment by the Hospital, and (2) does not relate to the SSDP or Base Plan.  (See McCann Opp'n Br. at 9-12.)  These arguments do not bear on the Court's analysis, and will not be further addressed.

group discount that they would not have received but for their employment by the Hospital; and (2) the Hospital endorsed the RSDP. (See dkt. entry no. 35, Provident Opp'n Br. at 15-28.)

"Congress enacted ERISA to protect working men and women from abuses in the administration and investment of . . . employee welfare plans." Donovan v. Dillingham, 688 F.2d 1367, 1370 (11th Cir. 1982); see also Conkright v. Frommer, 130 S.Ct. 1640, 1648-49 (2010) ("Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place.") ERISA recognizes two types of employee welfare plans: "employee welfare benefit plans" and "employee pension benefit plans". See 29 U.S.C. § 1002(3); Deibler v. United Food & Commercial Workers' L. Union 23, 973 F.2d 206, 209 (3d Cir. 1992). This action concerns an alleged employee welfare benefit plan.

An employee welfare benefit plan is a "plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). "Hence, a disability insurance policy is covered by ERISA if it is obtained through: (1) a plan, fund, or program; (2) that is established or maintained; (3) by an

employer; (4) for the purpose of providing benefits; (5) to its participants or beneficiaries." Spillane v. AXA Fin., Inc., 648 F.Supp.2d 690, 695 (E.D. Pa. 2009); see also Donovan, 688 F.2d at 1371.

The Safe Harbor Provision addresses the second element; it describes when and to what extent an employer may be involved with an employee welfare benefit program without being deemed to have established or maintained it. See Johnson v. Watts Regulator Co., 63 F.3d 1129, 1133 (1st Cir. 1995); Morris, 986 F.Supp. at 878. Specifically, it describes the extent to which an employer may be involved with a group insurance program offered to its employees. The Safe Harbor Provision removes such group insurance programs from the sphere of ERISA coverage where:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative

19

services actually rendered in connection with payroll
deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

If the Court determined that each of the Safe Harbor criteria
are satisfied here, then the Court would necessarily conclude that
(1) the Hospital did not establish or maintain the RSDP, and
(2) ERISA does not govern Count I of the Complaint.  See Schneider
v. UNUM Life Ins. Co. of Am., 149 F.Supp.2d 169, 176 (E.D. Pa.
2001); Shiffler v. Equitable Life Assurance Soc'y of U.S., 663
F.Supp. 155, 160 (E.D. Pa. 1986), aff'd, 838 F.2d 78 (3d Cir.
1988).  But a determination that one or more of the Safe Harbor
criteria are not satisfied does not compel the conclusion that the
claim raised against Provident is governed by ERISA.  See Gaylor v.
John Hancock Mut. Life Ins. Co., 112 F.3d 460, 463 (10th Cir.
1997).  "[A] program that fails to satisfy [each of the Safe Harbor
criteria] is not automatically deemed to have been 'established or
maintained' by the employer, but, rather, is subject to further
evaluation under the conventional tests."  Id. (citation omitted).

**A.   The RSDP is a "Plan"**

"Whether a plan exists within the meaning of ERISA is 'a
question of fact, to be answered in light of all the surrounding
facts and circumstances from the point of view of a reasonable
person.'"  Deibler, 973 F.2d at 209 (citation omitted).  An ERISA
plan exists "if from the surrounding circumstances a reasonable

20

person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Shaver v. Siemens Corp., 670 F.3d 462, 475 (3d Cir. 2012) (quoting Donovan, 688 F.2d at 1373).

Provident argues that a reasonable person could ascertain the intended benefits, class of beneficiaries, source of financing, and procedures for receiving benefits. (See Provident Br. at 6-11.) McCann has not provided a meaningful counterargument; he does not explicitly dispute that the RSDP is a "plan" under ERISA, and does not cite either to facts of record or legal authority that would tend to refute Provident's argument.

The Court has examined the record and considered case law from this and other circuits, and agrees with Provident.  A reasonable person who was familiar with all of the attendant facts and circumstances could ascertain both the intended benefits and beneficiaries of the RSDP.  See Deibler, 973 F.2d at 209; Donovan, 688 F.2d at 1373.  The RSDP did not exist in a vacuum.  Instead, it complemented other, established LTD plans: the Base Plan, which provided LTD benefits to eligible Hospital employees, and the SSDP, which provided supplemental LTD benefits to eligible Hospital staff doctors.  A reasonable person would recognize that the RSDP was analogous to the SSDP, as it provided similar supplemental LTD benefits to a defined class of Hospital employees, the Residents.

A reasonable person could also ascertain the source of financing associated with RSDP policies.  Courts in this and other circuits recognize that "[t]he source of funding may be the employer, the employee, or a combination of both." Tannenbaum v. Unum Life Ins. Co. of Am., No. 03-1410, 2006 WL 2671405, at *4 (E.D. Pa. Sept. 15, 2006) (citation omitted); see also Spillane, 648 F.Supp.2d at 696; Grimo v. Blue Cross & Blue Shield of Vt., 899 F.Supp. 196, 202 (D. Vt. 1995).  It is thus sufficient that a reasonable person could ascertain that each RSDP policyholder bore responsibility for the premiums associated with his or her policy. (See Chavez Aff. at ¶ 5.)  See Tannenbaum, 2006 WL 2671405, at *4.

A reasonable person could also ascertain the procedures for receiving benefits under a policy issued under the RSDP. "[A] reasonable person could ascertain that the employees were expected to look to the provisions of the policy and the insurer to determine the eligibility requirements to receive benefits.  In Donovan, the Court found that '[t]his common sense approach' adequately served employers' needs and was sufficient notice to a reasonable person of the procedures for receiving benefits." Weinstein v. Paul Revere Ins. Co., 15 F.Supp.2d 552, 557 (D.N.J. 1998) (quoting Donovan, 688 F.2d at 1374).

**B.    The Safe Harbor Criteria Have Not Been Satisfied**

McCann contends that the RSDP satisfies each of the Safe
Harbor criteria, and that ERISA does not govern Count I of the
Complaint.  (See McCann Opp'n Br. at 15, 16-17; McCann Br. at 14-
18.)  Provident does not dispute that the RSDP satisfies the second
and fourth of the Safe Harbor Criteria.  (See Provident Reply Br.
at 16.)  But Provident argues that the first and third criteria
have not been satisfied, as the Hospital both contributed to and
endorsed the RSDP.  (See Provident Opp'n Br. at 15-23.)

**1.    The Hospital Contributed to the RSDP**

Provident argues that the Hospital contributed to the RSDP by
providing a benefit to RSDP policyholders that was only available
based on their employment by the Hospital: the fifteen percent
discount associated with Risk Group No. 62252.  (Provident Reply
Br. at 16-21.)  McCann has acknowledged that he received certain
discounts from Provident, including a group discount.  But he
argues that an insurance company's decision to confer a group
discount should not be construed as an employer contribution.  (See
McCann Opp'n Br. at 16-17; McCann Br. at 16-17.)[7]

_____

[7] McCann cites to and quotes three cases in support of his
argument that a group discount should not be construed as an
employer contribution: (1) Schwartz v. Provident Life & Accident
Ins. Co., 280 F.Supp.2d 937 (D. Az. 2003); (2) Letner v. Unum life
Ins. Co. of Am., 203 F.Supp.2d 1291 (N.D. Fl. 2001); and (3) Rubin
v. Guardian Life Ins. Co. of Am., 174 F.Supp.2d 1111 (D. Or. 2001).
Insofar as the Letner Court found that a group discount could not
constitute an employer contribution, we find it unpersuasive.  And

The Third Circuit Court of Appeals has not yet interpreted the Safe Harbor Provision's requirement that "no contributions are to be made by an employer".  But several courts within this circuit have considered the issue and concluded that "contribution" should be given its clear meaning.  See, e.g., Morris, 986 F.Supp. at 880. These courts have concluded that group discounts applied to employee insurance policies, issued pursuant to an employee welfare benefit plan, constitute employer contributions.  See Harding v. Provident Life & Accident Ins. Co., 809 F.Supp.2d 403, 417-18 (W.D. Pa. 2011); Tannenbaum, 2006 WL 2671405, at *6; Stone v. Disability Mgmt. Servs., Inc., 288 F.Supp.2d 684, 691-92 (E.D. Pa. 2003). These courts, and others sitting outside the Third Circuit, have reasoned that employees who receive such group discounts receive a benefit that they could not otherwise receive as individuals, and would not have received but for the employer's role in creating the employee welfare benefit plan.  See Harding, 809 F.Supp.2d at 417 ("when discounted premiums are offered to a group of employees, the Safe Harbor regulations are not applicable"); Brown v. Paul Revere Life Ins. Co., No. 01-1931, 2002 WL 1019021, at *7 (E.D. Pa. May 20, 2002) ("Where an employer provides its employees benefits that they can not [sic] receive as individuals, it has contributed to an

---

insofar as McCann cites to and quotes from Schwartz and Rubin, we note that these cases did not analyze whether an employer contributed to an employee welfare benefit plan; instead, they analyzed whether an employer endorsed such a plan.

ERISA plan."); see also Healy v. Minn. Life Ins. Co., No. 11-659, 2012 WL 566759, at *4-5 (W.D. Mo. Feb. 21, 2012); Moore v. Life Ins. Co. of N. Am., 708 F.Supp.2d 597, 607 (N.D.W.V. Mar. 25, 2010) (referring to group discount as "constructive contribution"), aff'd, 439 Fed.Appx. 245 (4th Cir. 2011).

The Court finds this line of reasoning persuasive, and adopts and applies it to the instant dispute.  The evidence of record demonstrates that McCann received a benefit that he would not have received but for his association with and employment by the hospital -- the Risk Discount associated with Risk Group No. 62252. (See Supp. Plourde Aff. at ¶¶ 6, 8-9.)  The Court thus concludes that the Hospital contributed to the RSDP, and that the first Safe Harbor criterion is not satisfied.

## 2. The Hospital Endorsed the RSDP

Provident also argues that the fourth Safe Harbor criterion is not satisfied because the Hospital endorsed the RSDP.

The Third Circuit Court of Appeals has not yet addressed "endorsement", i.e., the extent to which an employer may involve itself in an employee welfare benefit plan without removing that plan from the ambit of the Safe Harbor Provision.  Other courts in this circuit have looked to the First Circuit's decision in Johnson v. Watts Regulator Co. for guidance.  See Ziesemer v. First Unum Life Ins. Co., No. 04-6429, 2006 WL 2465622, at *8-9 (D.N.J.

Aug. 23, 2006); <u>Selkridge v. United of Omaha Life Ins. Co.</u>, 221

F.Supp.2d 579, 583-84 (D.V.I. 2002); <u>Schneider</u>, 149 F.Supp.2d at

177-78; <u>Byard v. QualMed Plans for Health, Inc.</u>, 966 F.Supp. 354,

359-60 (E.D. Pa. 1997).  The <u>Johnson</u> court explained that the Safe

Harbor Provision

> operates on the premise that the absence of employer
> involvement vitiates the necessity for ERISA safeguards.
> In theory, an employer can assist its work force by
> arranging for the provision of desirable coverage at
> attractive rates, but, by complying with the regulation,
> assure itself that, if it acts only as an honest broker
> and remains neutral vis-a-vis the plan's operation, it
> will not be put to the trouble and expense that meeting
> ERISA's requirements entails.

<u>Johnson</u>, 63 F.3d at 1133.  That court also explained that "the

Department of Labor has called the employer neutrality that the

third facet evokes the key to the rationale for not treating such a

program as an employee benefit plan." <u>Id.</u> at 1134 (citation

omitted) (internal quotation marks omitted).

     The <u>Johnson</u> court held that an employer will be deemed to have

endorsed a program where an objectively reasonable employee, in

light of all of the surrounding facts and circumstances, "would

conclude on the basis of the employer's actions that the employer

had not merely facilitated the program's availability but had

exercised control over it or made it appear to be part and parcel

of the company's own benefit package." <u>Id.</u> at 1135.  "Where,

however, the employer separates itself from the program, making it

26

reasonably clear that the program is a third party's offering, not subject to the employer's control, then the safe harbor may be accessible." Id. at 1137.

The endorsement inquiry set forth in Johnson is necessarily fact-intensive, and thus does not provide a bright-line rule. But courts in this circuit have concluded that an employer endorses an employee welfare benefit plan when it takes some action -- any action -- beyond that contemplated by the Safe Harbor Provision. See Ziesemer, 2006 WL 2465622, at *8-9; Post v. Hartford Ins. Co., No. 04-3230, 2005 WL 424945, at *3 (E.D. Pa. Feb. 23, 2005) (noting that an employer "who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor"); Selkridge, 221 F.Supp.2d at 583-84; Schneider, 149 F.Supp.2d at 177-78; Byard, 966 F.Supp. at 359-60. By doing something more than permitting an insurer to publicize a plan or collecting premiums through payroll deductions, an employer demonstrates such a degree of control over a plan that an objectively reasonable employee would consider it "part and parcel of the company's own benefits package." See Johnson, 63 F.3d at 1137; Shiffler, 663 F.Supp. at 160 (employer may endorse employee welfare benefit plan by, inter alia, selecting the insurer that underwrites employee policies).

McCann contends that the Hospital did not endorse the RSDP because, "[b]eyond a single reference to [the Hospital] in the materials provided . . . by Manes, there is absolutely no evidence to remotely suggest than an objectively reasonable person in plaintiff's position would have concluded that [the Hospital] endorsed" the RSDP.  (McCann Opp'n Br. at 16.)  He also argues that the Hospital failed to endorse the RSDP because: (1) the Hospital did not directly communicate that it endorsed the RSDP; (2) the Hospital did not participate in the application process; (3) the materials provided by LEI and Provident did not bear any indicia that the Hospital endorsed the RSDP; and (4) the Hospital did not administer the plan, insofar as it did not participate in the claims process.  (McCann Br. at 16.)  We disagree.

McCann's argument ignores facts of record.  An objectively reasonable employee -- or, as urged by McCann, "an objectively reasonable person in [McCann's] position" -- would have understood that the Hospital endorsed the RSDP.  See Selkridge, 221 F.Supp.2d at 583; Byard, 966 F.Supp. at 360.  This understanding would rise from and be fostered by the agreements repeatedly executed by McCann and the Hospital, wherein the Hospital agreed to provide disability insurance as part of its standard benefits package.  (See Provident SOF at ¶¶ 7-9; Response to Provident SOF at ¶¶ 7-9; First Program Agreement; Third Program Agreement.)  The LEI

28

Marketing Materials further foster this understanding.  Those
materials explain that the Hospital selected Provident to "provide
supplemental disability insurance to Ford physicians", and referred
to the "Residents' Supplemental Disability Insurance Plan" and "the
Resident[s'] Plan".  (LEI Marketing Materials at 1.)  See
Selkridge, 221 F.Supp.2d at 583 (concluding that employer endorsed
employee benefit plan based in part on the plan's name, which
referenced the related employer).

Because the Hospital took some action beyond merely allowing
LEI and Provident to market insurance policies to the Residents, it
appears that an objectively reasonable employee would conclude that
the Hospital endorsed the RSDP.  Contrary to McCann's position, it
is immaterial that the Hospital did not draft or administer the
RSDP, or make decisions regarding claims.  See Schneider, 149
F.Supp.2d at 180-81.  The Hospital demonstrated that it endorsed
the plan by pledging to provide an opportunity to purchase
supplemental LTD insurance, and selecting Provident to provide such
insurance.  (See First Program Agreement; Third Program Agreement;
LEI Marketing Materials at 1.)  See Shiffler, 663 F.Supp. at 160.
The Court thus concludes that the third Safe Harbor criterion is
not satisfied, as the Hospital endorsed the RSDP.

C.    **The Hospital Established the RSDP**

Because the Court has determined that the Safe Harbor

Provision does not apply to the instant dispute, the Court must

continue its analysis "under the conventional tests." Gaylor, 112

F.3d at 463.

Provident argues that the Hospital established the RSDP by,

inter alia, selecting Provident as the insurance company that would

underwrite the policies issued pursuant to the RSDP, and engaging

LEI as its insurance broker. (See Provident Br. at 12-13, 14-15.)

McCann does not directly respond to this argument. He instead

appears to argue that the Hospital did not establish the plan

because "[t]here is no evidence that [the Hospital] played any role

in negotiating the terms of the Policy, drafting the Policy,

collecting premiums, paying premiums, investigating claims, or

processing claims." (McCann Br. at 12.) He also argues that the

Hospital "has had no administrative or financial involvement in

[the] Policy from its inception". (Id.)

An employer may easily establish an employee welfare benefit

plan.  See Gruber v. Hubbard, 159 F.3d 780, 789 (3d Cir. 1998); see

also Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins.

Co., 809 F.2d 617, 625 (9th Cir. 1987) ("An employer . . . can

establish an ERISA plan rather easily.  Even if an employer does no

more than arrange for a 'group-type insurance program,' it can

30

establish an ERISA plan, unless it is a mere advertiser who makes
no contributions on behalf of its employees."). "In order to
establish or maintain a plan, there must be some meaningful degree
of participation by the employer in the creation or administration
of the plan, and an intent to provide its employees with a welfare
benefit program." Weinstein, 15 F.Supp.2d at 558 (citations
omitted) (internal quotation marks omitted).

No single act necessarily constitutes the establishment of an
employee welfare benefit plan.  See Donovan, 688 F.2d at 1373.
However, where multiple polices are purchased, covering a class of
employees, that is significant evidence of the establishment of a
plan.  See id.; Weinstein, 15 F.Supp.2d at 558 (referring to same
as "substantial evidence").  "The crucial factor in determining
whether a 'plan' has been established is whether the employer has
expressed an intention to provide benefits on a regular and long-
term basis." Shaver, 670 F.3d at 478 (quoting Deibler, 973 F.2d at
209) (internal brackets omitted).

The record here contains substantial evidence that the
Hospital established the RSDP, because it is undisputed that
multiple Residents purchased policies issued pursuant to the RSDP.
(See Provident SOF at ¶ 40 (deemed undisputed).)  See Donovan, 688
F.2d at 1373; Weinstein, 15 F.Supp.2d at 558.  Seven Residents
purchased RSDP policies while McCann was employed at the Hospital,

31

and twenty-five Residents participated in the RSDP between March 1, 1991 and October 1, 1993.  (See Provident SOF at ¶ 40.)

The record also contains ample evidence demonstrating that the Hospital maintained the RSDP.  The Hospital assumed some responsibility for the administration of the plan by engaging LEI as a broker, to contact Residents and make them aware of the opportunity to purchase supplemental insurance under the RSDP. (See Provident SOF at ¶ 58 (deemed undisputed); Plourde Aff. at ¶ 19.)  See Weinstein, 15 F.Supp.2d at 558 (finding that employer established an employee welfare benefit plan where it engaged an insurance broker).  By engaging LEI, the Hospital assumed a role in the ongoing administration of the RSDP.  See Weinstein, 15 F.Supp.2d at 558.  "In fact, the administrative duties of the insurance broker appear to have extended beyond the mere distribution of application forms."  Id.  Manes did not merely provide McCann with an application; he spoke to McCann about the benefits available under the RSDP, and provided a written comparison of those benefits with those available under the Northwestern Policy.  (See Handwritten Letter.)

The Court thus concludes that the Hospital either established or maintained an employee welfare benefit plan.

32

D.   **The Hospital is an "Employer", and the RSDP Exists to Provide Supplemental LTD Benefits to the Residents**

The Court has examined the record, and concludes that: (1) the Hospital is an "employer" within the meaning of ERISA; and (2) the RSDP exists to provide supplemental LTD benefits to the Residents. (See Plourde Aff. at ¶ 12 (noting purpose of RSDP).)   See 29 U.S.C. § 1002(5) (defining "employer" as "any person acting directly as an employer . . . in relation to an employee benefit plan").  As McCann does not dispute these points, the Court will not further discuss them.

E.   **McCann is both a "Participant" and a "Beneficiary", as Those Terms are Defined by ERISA**

McCann urges the Court to conclude that ERISA does not govern Count I of the Complaint because he was not an employee of the Hospital when the Policy took effect.  (See McCann Opp'n Br. at 9.) The Court has determined, however, that his argument is misplaced. The evidence demonstrates that McCann is both a "participant" in and a "beneficiary" of the RSDP.

1.   **McCann is a Participant in the RSDP**

ERISA defines "participant" as "any employee or <u>former employee</u> of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ."  29 U.S.C. § 1002(7) (emphasis added).  The Court will deem a former employee to be

33

among those who "may become eligible" to receive benefits if he has a colorable claim that he will prevail in a suit for benefits.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989); Abraham v. Exxon Corp., 85 F.3d 1126, 1129 (5th Cir. 1996); see also Kennedy v. Conn. Gen. Life Ins. Co., 924 F.2d 698, 700 (7th Cir. 1991) (explaining that status as a participant "depends on an arguable claim, not on success").

The record demonstrates that McCann is a "participant", as McCann is a former employee of an employer -- the Hospital -- who became eligible to receive benefits under a "plan, fund or program" -- the RSDP – upon a showing of disability.  (See Provident SOF at ¶ 5, 7-9, 20; McCann Response to Provident SOF at ¶ 5, 7-9, 20.) See Abraham, 85 F.3d at 1129; but cf. Miller v. Rite Aid Corp., 334 F.3d 335, 341-42 (3d Cir. 2003) (former employee was not a participant where he had not vested in the plan at issue during employment and could not, as a former employee, thereafter vest in the plan); Sallee v. Rexnord Corp., 985 F.2d 927, 929 (7th Cir. 1993) (same).

## 2. McCann is a Beneficiary of the RSDP

ERISA defines "beneficiary" as "a person designated . . . by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  Because McCann received benefits under the Policy (which was issued

pursuant to the RSDP), and because McCann enjoyed an ongoing group discount, he was a beneficiary of the RSDP.  See Keenan v. Unum Provident Corp., 252 F.Supp.2d 163, 168 (E.D. Pa. 2003) (concluding that plaintiff was beneficiary of disability insurance plan, "as evidenced by his receipt of disability benefits and the 15% discount").

## VI.   CONCLUSION

The Court has concluded that: (1) the RSDP is a plan (2) that was either established or maintained (3) by the Hospital (4) to provide supplemental LTD benefits (5) to participants, such as McCann.  The Court, for good cause appearing, will issue a separate Order and Judgment, granting the Provident Motion, denying the McCann Cross Motion, and declaring that Count I of the Complaint is governed by ERISA.[8]

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Date:     January 31, 2013

---

[8] It appears that ERISA preempts the breach of contract claim that McCann has raised against Provident.  See 29 U.S.C. § 1144; Ford v. UNUM Life Ins. Co. of Am., 351 Fed.Appx. 703, 706 (3d Cir. 2009); Estate of Casella v. Hartford Life Ins. Co., No. 09-2306, 2009 WL 2488054, at *2-4 (D.N.J. Aug. 11, 2009).  The Court will thus separately order the parties to show cause why judgment should not be entered on that claim against McCann and in Provident's favor.