NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

KEVIN M. MCCANN, M.D.,

   Plaintiff,

v.

UNUM PROVIDENT and HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

   Defendants.

Civil Action No. 11-3241 (MAS) (TJB)

**MEMORANDUM OPINION**

## SHIPP, District Judge

  This matter comes before the Court upon cross-motions between the parties. In the first, Plaintiff Dr. Kevin McCann, M.D. ("Dr. McCann") seeks partial summary judgment as to his total disability claim. (ECF No. 153.) Defendant Provident Life and Accident Insurance Company ("Provident" or "Defendant") opposed (ECF No. 167), and Dr. McCann replied (ECF No. 172). In the second motion, Defendant moves to continue Dr. McCann's Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56(d) pending further discovery. (ECF No. 166.) Dr. McCann opposed (ECF No. 172), and Defendant replied (ECF No. 177). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Dr. McCann's motion is denied and Defendant's motion is granted.

## I. BACKGROUND

The parties are familiar with the factual and procedural history of this matter, and therefore the Court only recites those facts necessary to resolve the instant motion. Dr. Kevin McCann is a radiologist certified in the specialty of interventional radiology. *McCann v. Unum Provident*, 907 F.3d 130, 133 (3d Cir. 2018). Defendant Provident Life, later Unum Provident Corporation, issued to Dr. McCann disability income policy number 6-337-04053663, effective July 1, 1991 (the "Policy"), which remains in effect to date. (Pl.'s Statement of Material Facts ¶ 1, ECF No. 153-1 ("PSMF"); Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 1, ECF No. 167-2 ("DRPSMF").) Under that policy, Dr. McCann was entitled to disability payments from Defendant in the event he was "not able to [p]erform the substantial and material duties of [his] occupation." (PSMF ¶ 2; DRPSMF ¶ 2.)

As early as 2006, Dr. McCann began to experience the symptoms that would give rise to both his disability claim with Defendant and the instant litigation. (PSMF ¶ 14; DRPSMF ¶ 14.) In December of 2006, Dr. McCann was diagnosed with obstructive sleep apnea. (PSMF ¶ 14; DRPSMF ¶ 14.) Following an April 2007 episode of shortness of breath, Dr. McCann was treated at an emergency room, and an echocardiogram showed that he had a mildly dilated aortic root. (PSMF ¶ 20; DRPSMF ¶ 20.) On January 9, 2008, a CT scan measured the dilation of the aortic root at 3.8-4.0 centimeters. (PSMF ¶ 21; DRPSMF ¶ 21.) Subsequently, Dr. McCann consulted Dr. Joseph S. Coselli, a cardiothoracic surgeon at Baylor Clinic in Texas. (PSMF ¶ 22; DRPSMF ¶ 22.) In an April 3, 2008 letter, Dr. Coselli determined that Dr. McCann's aortic aneurysm showed a dilation of four centimeters and did not require surgical intervention at that time. (PSMF ¶ 23; DRPSMF ¶ 23.) Nevertheless, in the April 3, 2008 letter, Dr. Coselli found that "Dr. McCann has hypertension and sleep apnea putting him into a high-risk population for further dilation of his

2

aorta." (PSMF ¶ 23 (citations omitted); DRPSMF ¶ 23.) The parties agree that Dr. Coselli instructed Dr. McCann to "avoid stressful situations that could cause increases in his blood pressure." (PSMF ¶ 25; DRPSMF ¶ 25.) Furthermore, the parties agree that on September 19, 2008, Dr. Coselli found that Dr. McCann should be "classified as fully disabled permanently." (PSMF ¶ 26 (citations omitted); DRPSMF ¶ 26.) Moreover, the parties also agree that on September 9, 2009, Dr. Coselli found that Dr. McCann's disability status remained unchanged. (PSMF ¶ 26; DRPSMF ¶ 26.)

Dr. McCann submitted a claim for benefits under the Policy in March 2008. (PSMF ¶ 27; DRPSMF ¶ 27.) In that claim, Dr. McCann advised that he suffered from an abnormally dilated ascending aorta and that his attending physician, Dr. Coselli, had imposed certain restrictions on his activities, including "[a]void[ing] heavy lifting, [and] avoid[ing] stress to help keep blood pressure ("BP") under control to prevent further dilation of aorta." (PSMF ¶¶ 27-28; DRPSMF ¶¶ 27-28.) A September 4, 2008 letter conveyed Defendant's decision to initiate payments for total disability as of June 8, 2008. (PSMF ¶ 34; DRPSMF ¶ 34.) By September 11, 2008, however, Defendant had referred Dr. McCann's file for a full medical review by its in-house cardiologist, Dr. Joseph Davids. (PSMF ¶ 35; DRPSMF ¶ 35.) Dr. Davids's review ultimately determined that the restrictions and limitations identified by Dr. Coselli were supported with respect to Dr. McCann's aortic aneurysm. (PSMF ¶ 37; DRPSMF ¶ 37.) By letter dated January 6, 2009, Defendant determined that Dr. McCann was totally disabled and qualified for benefits. (PSMF ¶¶ 43-44; DRPSMF ¶¶ 43-44.)

Defendant notes, however, that as early as April 2008, there were a number of observations by Dr. Coselli that are somewhat discordant with a finding that Dr. McCann's aortic condition rendered him disabled for the purposes of the Policy. For example, the parties agree that in an

3

attending physician statement ("APS") dated April 2, 2008, Dr. Coselli noted that Dr. McCann was "asymptomatic" and had "no restrictions" other than "lifting to the extent that it elicited a Valsalva maneuver."[1] (Def.'s Statement of Material Facts in Opp'n to Pl.'s Summ. J. Mot. ¶¶ 11-12, ECF No. 167-1 ("DSMF"); Pl.'s Resp. to Def.'s Statement of Material Facts ¶¶ 11-12, ECF No. 173-4 ("PRDSMF").) Furthermore, the parties agree that on July 30, 2008, Provident Life received an APS from Dr. Coselli, which reiterated that Dr. McCann was "asymptomatic," and was released to return to his employment as an interventional radiologist except "no lifting that elicits Valsalva[] maneuver otherwise no restrictions." (DSMF ¶ 34; PRDSMF ¶ 34.) Defendant also notes that on July 30, 2008, in response to a question on a form asking, "[h]ave you advised patient to return to work?", Dr. Coselli marked an "X" in the box labeled "Yes." (DSMF ¶ 42; PRDSMF ¶ 42.) Additionally, Defendant cites a somewhat ambiguous September 9, 2009 note from Dr. Coselli stating that during a visit, he and Dr. McCann "discussed the terminology of permanent and total disability and we agreed to disagree regarding the sequence of events. The fact remains that over the past two years following him, his aorta has been essentially stable." (DRPSMF ¶ 54 (emphasis omitted); Pl.'s Reply to Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 54, ECF No. 172-1 ("PRDRPSMF") (emphasis omitted).)

By October 22, 2009, at Dr. Coselli's recommendation, Dr. McCann sought out a local primary physician, Dr. David Lombardi, to coordinate and manage his care. (PSMF ¶¶ 54-55; DRPSMF ¶¶ 54-55.) Based on the September 9, 2009 and April 3, 2008 documentation from Dr. Coselli discussed above, as well as his own office visit with Dr. McCann, Dr. Lombardi agreed that Dr. McCann had an ongoing disability. (DRPSMF ¶ 69; PRDRPSMF ¶ 69.) Dr. Lombardi

---

[1] "A Valsalva maneuver is a breathing technique that requires a forceful attempted exhalation against a closed airway." *McCann*, 907 F.3d at 136 n.5.

4

wrote, "I now oversee Dr. McCann's general medical care. Given documentation and general recommendations of the cardiothoracic surgeon [Dr. Coselli], I therefore, agree and support Dr. McCann's ongoing disability." (DRPSMF ¶ 69 (emphasis omitted); PRDRPSMF ¶ 69 (emphasis omitted).)

Beginning in the summer of 2009, Defendant reexamined Dr. McCann's total disability status. *McCann*, 907 F.3d at 137. In the course of that review, Defendant's medical consultant and cardiologist, Dr. Alfred Parisi, reviewed Dr. McCann's medical information. (PSMF ¶ 69; DRPSMF ¶ 69.) Dr. Parisi's medical review included a conversation with Dr. Lombardi. (PSMF ¶ 69; DRPSMF ¶ 69.) Among other things, Defendant's 2009 reexamination relied upon Dr. Coselli's August 10, 2009 APS notes. *McCann*, 907 F.3d at 139. Dr. Parisi's review ultimately determined that Dr. McCann could perform certain work as a non-interventional radiologist with limits on heavy lifting, nightshift and weekend hours, and a limit of no more than fifty hours of work per week. (PSMF ¶¶ 71, 74; DRPSMF ¶¶ 71, 74.) A second in-house reviewer, Dr. Costas Lambrew, concurred with Dr. Parisi's conclusions. (PSMF ¶¶ 72-74; DRPSMF ¶¶ 72-74.) In the course of its reexamination, "Provident noted its vocational consultant 'concluded that the majority of [Dr. McCann's] practice was diagnostic radiology which involves sitting at a computer to read films.'" *McCann*, 907 F.3d at 139 (citations omitted). In a letter dated December 23, 2009, Defendant terminated Dr. McCann's individual disability claim. (PSMF ¶ 75; DRPSMF ¶ 75.)

Dr. McCann filed an appeal of the denial of his disability benefits with Defendant. (PSMF ¶ 79; DRPSMF ¶ 79.) In connection with that appeal, Dr. McCann included a letter from his cardiologist, Dr. Chandra Madala, who concluded that the aneurysm left Dr. McCann fully and permanently disabled and emphasized the importance of him avoiding stress. (PSMF ¶ 81; DRPSMF ¶ 81.) Dr. Madala relied on Dr. Coselli's earlier opinions in reaching this conclusion.

5

(PRDRPSMF ¶ 81; DRPSMF ¶ 81.) During this appeal, Defendant again referred Dr. McCann's file to one of its reviewers, this time to Dr. Paul W. Sweeney. (PSMF ¶ 82; DRPSMF ¶ 82.) In the course of his review, Dr. Sweeney wrote Dr. Coselli and asked him to clarify his opinion regarding Dr. McCann's ascending aortic aneurysm and potential disability. (DRPSMF ¶ 82; PRDRPSMF ¶ 82.) Before he received a response from Dr. Coselli, in a report dated September 20, 2010, Dr. Sweeney concluded that Dr. McCann could perform both diagnostic and interventional duties without restrictions and limitations. (DRPSMF ¶¶ 82, 89; PRDRPSMF ¶¶ 82, 89.) Minutes after Dr. Sweeney's report was issued and after Provident issued its final determination letter, Dr. Sweeney received a response from Dr. Coselli. (DRPSMF ¶ 82; PRDRPSMF ¶ 82.) In that letter, Dr. Coselli apparently clarifies that he no longer supported disability status for Dr. McCann as it related to his aorta. (DRPSMF ¶ 82; PRDRPSMF ¶ 82.)[2]

Dr. McCann filed the present action seeking review of Defendant's determination on his disability claim. Ultimately, the Third Circuit determined that under the Policy, "Dr. McCann's occupation [is] an interventional radiologist" for the purposes of assessing a Policy claim. *McCann*, 907 F.3d at 149. Notwithstanding Defendant's final determination, "diagnostic radiology is one component of an interventional radiologist's specialty, but not the only

---

[2] In a previous opinion, Magistrate Judge Bongiovanni struck Dr. Coselli's September 20, 2010 correspondence and subsequent related communications as outside of the administrative record before the Court. (Mem. Op. 7-9, ECF No. 70.) Judge Bongiovanni reasoned that "[a]lthough Dr. Coselli's letter was received only 45 minutes after the determination was made, the fact remains that the determination was made without reference or reliance upon this later-received letter." (*Id.* at 7-8 (citing *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) ("[A] reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales.")).) In striking the documents, however, Judge Bongiovanni noted that "[w]hile this Court has stricken the aforementioned documents from the administrative record, same are still part of the record of this litigation and, as such, may be considered by the District Court if it so chooses." (*Id.* at 9.)

6

component." *Id.* at 150. In its opinion, the Third Circuit concluded that a question remained as

to:

> whether Dr. McCann's medical conditions prevented him from being able to perform the substantial and material duties of his specialty, either by rendering him physically unable or by so limiting his availability that he was precluded from continuing his practice as an interventional radiologist. On this question we find a dispute of material fact, which we remand for the District Court to consider.

*Id.* at 150-51. The Third Circuit further noted "some level of consensus on this question." *Id.* at 151. The Court of Appeals observed that several of Defendant's in-house reviewers such as Dr. Parisi concluded that "if Dr. McCann is an interventional radiologist it is reasonable that he would not be able to perform some of the interventional activities." *Id.* (citations omitted). Nevertheless, during Defendant's final examination of Dr. McCann's claim, Dr. Sweeney found "'[t]here are no limitations on function supported' which 'would prevent Dr. McCann from resuming on a full-time basis his previous occupation as an interventional and diagnostic radiologist." *Id.* (citations omitted). In the cross-motion now before the Court, Dr. McCann moves for summary judgment on the question of whether his medical conditions prevent him from performing the material and substantial duties of an interventional radiologist.[3]

## II. LEGAL STANDARD

The underlying purpose of summary judgment "is to avoid a trial 'in cases where it is unnecessary and would only cause delay and expense.'" *Ullrich v. U.S. Sec'y of Veterans Affairs*,

---

[3] Although the Third Circuit also remanded the case to this Court with instructions to consider the question of Dr. McCann's residual disability, Dr. McCann has not moved for summary judgment on that question. (Pl.'s Moving Br. 2, ECF No. 153-2 ("If Dr. McCann prevails . . . and is determined to be [t]otally [d]isabled within the meaning of the [P]olicy. the Court need not reach the question of residual disability. Therefore, Dr. McCann moves for partial summary judgment on the first issue only, and reserves the right, if necessary, to proceed with the second issue[.]").)

7

457 F. App'x 132, 136 (3d Cir. 2012) (quoting *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "[D]isputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (citation omitted). To decide whether a genuine dispute of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. Absent a genuine dispute for trial, summary judgment as a matter of law is proper.

Under Rule 56(d), a party may oppose summary judgment on the grounds that insufficient discovery has been taken. *Malouf v. Turner*, 814 F. Supp. 2d 454, 459 (D.N.J. 2011). If facts are unavailable to the nonmovant, it may "show[ ] by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). If the nonmovant presents sufficient reasoning by affidavit, the Court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d); *see also Bracy v. Pfizer, Inc.*, 839 F. App'x 691, 694 (3d Cir. 2020) ("Where the factual record is inadequate for a nonmovant to respond to a motion for summary judgment, the district court may defer or deny the motion."). "[C]hallenges under

8

Rule 56(d) are usually granted 'as a matter of course[.]'" *Id.* (quoting *St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994)). "If discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015).

## III. DISCUSSION

The Court finds that the discovery request now before the Court pertains to facts that are material to the moving party's entitlement to judgment as a matter of law. Furthermore, the Court finds that Defendant, as nonmovant, has identified "facts essential to justify its opposition" but that are not presently available to it. Fed. R. Civ. P. 56(d). Accordingly, pursuant to Rule 56(d), the Court will deny Plaintiff's Motion for Partial Summary Judgment without prejudice in order to allow Defendant time to take discovery.

The parties agree, and the Third Circuit has already found, that in the present case, this Court must perform a *de novo* review to determine whether Defendant was correct in denying Dr. McCann's disability claim. *McCann*, 907 F.3d at 147 (citing *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) ("if we exercise *de novo* review, the role of the court is to determine whether the administrator . . . made a correct decision." (alteration in original))). "Our review is not colored by a presumption of correctness and we determine whether the insured was entitled to benefits under the plain terms of their policy." *Id.* "[A] district court exercising *de novo* review over an ERISA determination between beneficiary claimants is not limited to the evidence before the [f]und's [a]dministrator." *Luby v. Teamsters Health, Welfare, & Pension Tr. Funds*, 944 F.2d 1176, 1184-85 (3d Cir. 1991); *see, e.g., Viera*, 642 F.3d at 418 ("On remand, the [d]istrict [c]ourt must determine whether [the plan administrator] properly denied [P]laintiff recovery under the

9

[p]olicy. This determination may be based on any information before the administrator initially, as well as any supplemental evidence such as [an independent expert's] report.")

Here, based on its review of the entire summary judgment record, including the certification from counsel for Defendant Provident Life concerning potential supplemental evidence needed to oppose Dr. McCann's motion, the Court finds that focused discovery is needed in order for Defendant to address the instant motion. *Accord with Viera v. Life Ins. Co. of N. Am.*, 871 F. Supp. 2d 379, 384 (E.D. Pa. 2012) ("When reviewing *de novo* a decision of the plan administrator, it is within the discretion of this Court to expand the record as needed or proceed on the basis of the previously developed record.").

Counsel avers that there are a number of issues and specific items of discovery needed in order for Defendant to justify its opposition to the Motion for Partial Summary Judgment. "Provident Life seeks the depositions of all of [P]laintiff's treating physicians, particularly but not limited to Drs. Madala and Lombardi." (DiGiaimo Certif. ¶ 21(i), ECF No. 166-2.) Counsel asserts that "both physicians relied upon early reports of Dr. Coselli, without having in hand" all of Dr. Coselli's opinions, including the September 20, 2010 letter in which he appears to have affirmatively rejected Dr. McCann's claim that he was disabled. (*Id.*) Relatedly, "Provident Life seeks the deposition of Dr. Coselli to clarify and confirm his opinion regarding Dr. McCann's restrictions and limitations as of September 20, 2010." (*Id.* ¶ 21(j).) The Court agrees that depositions of Drs. Madala, Lombardi, and Coselli, as well as paper discovery related to each of their opinions, are necessary in order to allow Defendant to properly oppose the instant summary judgment motions. Paper discovery shall include the September 20, 2010 correspondence from

Dr. Coselli to Dr. Sweeney, apparently clarifying that he no longer supported disability status for Dr. McCann, as well as other related records.[4]

Additional discovery will assist the Court in determining whether or not "evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *EBC, Inc.*, 618 F.3d at 262. "Ultimately, Plaintiff bears the burden of proof and must present required medical information to the Plan in order for the Plan (through the Claims Administrator) to find that he is disabled." *Zurawell v. Long Term Disability Income Plan or Choices Eligible Emps. of Johnson & Johnson*, No. 07-5973, 2010 WL 3862543, at *10-11 (D.N.J. Sept. 27, 2010). Dr. McCann asserts that "there is no doctor in this entire 2500+ page record, whether treating providers or records reviewers," including Defendant's in-house medical experts, "who asserted that Dr. McCann could safely resume his interventional radiology procedures or take call." (Pl.'s Moving Br. 11, ECF No. 153-2.) Nevertheless, as discussed above, Defendants have identified a number of ambiguities in Dr. Coselli's opinion regarding Dr. McCann's total disability claim, including but not limited to his September 20, 2010 letter. Moreover, as discussed above, Dr. Coselli's opinion was foundational to many of the medical opinions in this matter that were given subsequent to his. In order to properly oppose Dr. McCann's motion and, perhaps, establish that no rational person could rely on Dr. Coselli's opinion as supporting a finding that Dr. McCann was totally disabled from working as an

---

[4] The Court previously affirmed Judge Bongiovanni's decision to strike related evidence from the administrative record. (*See generally* Mem. Op., ECF No 147 (Shipp, J.).) Nevertheless, the Court finds that the appeal of Judge Bongiovanni's prior order came before the Court in a different posture and was reviewed under a different legal standard. *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Grp. Sec., Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997) (citations omitted) (noting that "particularly broad deference [is] given to a magistrate judge's discovery rulings"). Moreover, the Court observes that even when striking these documents, Judge Bongiovanni cautioned the parties that the documents "may be considered by the District Court if it so chooses." (Mem. Op. 9, ECF No. 70 (Bongiovanni, J.).)

interventional radiologist, Defendants must have additional discovery. *Accord with Hart v. City of Philadelphia*, 779 F. App'x 121, 128-29 (3d Cir. 2019) (finding that "the District Court abused its discretion in not heeding [plaintiff's] request to allow him to conduct discovery so that he could present evidence to properly oppose [defendant's] motion.").

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment is denied without prejudice pending further discovery on the items outlined above. Defendant's Motion for a Continuance is granted. An Order consistent with this Memorandum Opinion will be entered.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**